[No. S039161. Mar. 23, 1998.]

MICHAEL RANDALL, a Minor, etc., et al., Plaintiffs and Respondents, v. ORANGE COUNTY COUNCIL, BOY SCOUTS OF AMERICA, Defendant and Appellant.

## COUNSEL

Hughes, Hubbard & Reed, George A. Davidson, Carla A. Kerr, John Kralik IV and Lois Moonitz Jacobs for Defendant and Appellant.

Paul A. Hoffman, Lacy & Lacy and James V. Lacy as Amici Curiae on behalf of Defendant and Appellant.

Jon W. Davidson, Paul L. Hoffman, James Grafton Randall, Mark D. Rosenbaum, Taylor Flynn, Karl Manheim, Morrison & Foerster and Dennis M. Perluss for Plaintiffs and Respondents.

Eugene N. Stuart III as Amicus Curiae on behalf of Plaintiffs and Respondents.

Daniel E. Lungren, Attorney General, and Tracey Buck-Walsh, Assistant Attorney General, as Amici Curiae.

## OPINION

**GEORGE, C. J.**—Plaintiffs were prohibited from continuing their membership and advancing in the Cub Scouts by defendant, a regional council of the Boy Scouts of America, because of plaintiffs' failure or refusal to participate in religion-related elements of the scout program and because of plaintiffs' refusal to affirm a belief in God. Plaintiffs successfully sought an injunction barring defendant from excluding them from scout activities on religious grounds.

As does the companion case of *Curran* v. *Mount Diablo Council of the Boy Scouts* (*Curran*) (1998) 17 Cal.4th 670 [72 Cal.Rptr.2d 410, 952 P.2d 218], this case presents two issues: First, does defendant, in admitting or excluding members, come within the definition of those entities covered by California's public accommodation statute (Civ. Code, § 51, commonly known as the Unruh Civil Rights Act)?[1] Second, if defendant's membership decisions are subject to the Unruh Civil Rights Act, would application of the Act to prohibit defendant from excluding plaintiffs from membership or advancement in the scout organization violate defendant's (or its members') right of intimate or expressive association under the First and Fourteenth Amendments of the federal Constitution?

For the reasons set forth in *Curran, supra*, 17 Cal.4th 670, we conclude that defendant's membership decisions are not subject to the provisions of the Unruh Civil Rights Act. Accordingly, we need not reach defendant's contention that application of the Act, to prohibit it from excluding plaintiffs from membership on the basis of their refusal to affirm a belief in God, would violate its constitutional right of intimate or expressive association.

I

Plaintiffs Michael and William Randall, twin brothers, joined the Cub Scouts when they were seven years of age. They participated in a Cub Scout pack in Culver City for two years, advancing from "Tiger Cub" to "Bobcat" to "Wolf" rank. They testified at the trial below that on the rare occasions when they repeated the Cub Scout Promise, they did not say the word "God," and that when they explained their lack of belief in God to their den leader in Culver City, he permitted them to omit any reference to God. The den leader, on the other hand, testified that the boys had recited the entire promise in his den and never had raised any question regarding their belief in God.

---

[1] For convenience and to minimize repetition, we hereafter refer to this statute as either the Unruh Civil Rights Act or simply the Act.

When the family moved to Anaheim Hills in Orange County, the boys joined Cub Scout Den 4, which was affiliated with Pack 519, a part of defendant Orange County Council. While the boys were working on the requirements for advancement to the "Bear" rank in 1990, a problem arose. One of these requirements has a religious component, which was stated in the following terms in the materials provided to boys seeking advancement: "We are lucky the people who wrote and signed our constitution were very wise. They understood the need of Americans to worship God as they choose. A member of your family will be able to talk with you about your duty to God. Remember, this achievement is part of your Cub Scout Promise. 'I, _____, promise to do my best to do my duty to God and my country.' " Further, the Cub Scout seeking advancement to the "Bear" rank is instructed to: "Practice your religion as you are taught in your home, church, synagogue, mosque or other religious community." Religious emblems provided by the scout's own religious institution also may be earned at this point.

At a den meeting, the Randall boys stated they would have a problem with the religion requirement, and stated that they did not believe in God. The den leader observed that she thought belief in God was necessary to complete the religion requirement. After consulting with officials in defendant Orange County Council, the pack leader confirmed to the boys' mother that this was the policy.

Initially, defendant's position was that the boys could remain in the den, but that they could not advance in the Cub Scout ranks until they promised to do their duty to God. At trial, officials of defendant council stated that the boys may not participate at all as Cub Scouts if they do not believe in God, because such a state of disbelief is inconsistent with the Cub Scout Promise to perform a duty to God. Officials of the national scouting organization, Boy Scouts of America, made similar statements.

Plaintiffs, through their mother as guardian ad litem, filed a complaint for injunctive relief, naming the Orange County Council as defendant. The complaint alleged that defendant and its agents informed plaintiffs that they no longer were permitted to participate in or advance in scouting activities or be active members of the Boy Scouts of America, because plaintiffs refused to take part in religious requirements or activities, use the word "God" in the Boy Scout Pledge, worship God in song, prayer, or study, or earn religious medals or emblems as provided in the Big Bear Cub Scout Book. The complaint alleged a violation of the Unruh Civil Rights Act, in that plaintiffs claimed they were denied equal access to an organization covered by the Act because they had no religious beliefs. The complaint sought injunctive relief prohibiting further exclusion or impediment to participation in scouting activities, attorney fees according to proof, and statutory damages of $250.

Plaintiffs secured a temporary restraining order on February 21, 1991. It prohibited the Orange County Council and its agents from refusing plaintiffs membership in the Boy Scouts of America, from conditioning their advancement upon religious components, and from requiring them to use the word "God" in any pledge or vow. The court granted a preliminary injunction on April 25, 1991, affording the same relief and adding a prohibition against defendant's refusing to advance plaintiffs to the higher ranks of the Cub Scouts on the basis of such requirements.

Defendant appealed from the issuance of the preliminary injunction. The Court of Appeal stayed enforcement of the preliminary injunction and ultimately granted defendant's petition for writ of supersedeas. Accordingly, plaintiffs ceased participation in Cub Scout Den 4 pending trial.

Before the appeal from the order granting the preliminary injunction was decided, the matter went to trial.

At trial, plaintiffs presented evidence intended to establish that the Orange County Council operated as a business establishment within the meaning of the Unruh Civil Rights Act because of its substantial holdings in real estate, its large-scale revenue-raising and revenue-earning activities (a portion of which are directed at the general public), its operation of commercial establishments open to the public, and its employment of 55 full-time and 12 part-time employees.[2]

With respect to the constitutional questions, plaintiffs introduced evidence of the recreational and social quality of Cub Scout activities, and sought to establish that religion plays a minimal role in the Cub Scout program. In addition, plaintiffs introduced evidence of the nonsectarian, nonexclusive policies of the Boy Scouts of America and pointed to elements of the program materials provided by the Boy Scouts of America indicating that Cub Scouts are expected to learn about religion at home and through their religious organizations, rather than through their den leaders.

Plaintiffs also pointed out that defendant had accepted funds from the United Way charitable organization on the condition that any program so

[2]Defendant council owns its own headquarters building and operates two scout shops. It also owns a 1,200-acre campsite and leases 2 other campsites. All may be used by nonmembers for a fee. In 1989, the council's "trading post" shops produced income of $77,639; camping activities produced income of $421,191, and "general activities" produced income of $1,233,411. In order to raise money, the council also runs special events open to the public during the year. For example, the council holds a golf tournament, open to the public, that raised $42,000 in excess of expenses in 1991. The council's fund-raising activities in 1989 included golf tournaments, sports lunches, a service club lunch, a high-technology fair, and a tennis tournament, producing a net income of $498,794.

funded would not be limited to individuals of any particular religious belief, that such programs would be open to any individual regardless of religious belief, and that no individual served by any United Way program would be required to participate in any religious activity as a condition of receiving such service.

In responding to plaintiffs' evidence, defendant first presented evidence relevant to the issue of its status as a business establishment, demonstrating that most of its programs are carried out by volunteers rather than by its paid employees, who are employed to serve the volunteers; that its board of governors consists of volunteers; that much of its income is derived from charitable contributions; that its stores exist to serve the members and do not produce a profit; and that rental of camp facilities to nonmembers is for a nominal fee. Defendant also stressed that it has a noncommercial, exclusively charitable purpose, namely to promote certain skills and moral values in its youth membership.

Defendant also produced extensive evidence regarding the nature and extent of its expressive function. It produced evidence intended to demonstrate that it does, in fact, have a religious message, as well as evidence intended to show how that message is meant to be conveyed to Cub Scouts.

It was stipulated by the parties that the Boy Scouts of America, which regulates the regional council's membership activities, requires as a condition of Cub Scout membership that all applicants for membership state that they recognize a duty to God. The Cub Scout application form contains the following affirmation: "I have read the Cub Scout Promise and the Law of the Pack and promise to try to live up to them." The Cub Scout Promise consists of the following: "I, ___, promise to do my best to do my duty to God and my country, to help other people, and to obey the law of the pack." The Cub Scout application form also informs parents that the "Boy Scouts of America recognizes the importance of religious faith and duty." It asks parents to affirm that they have read the Cub Scout Promise and will assist their son in observing the policies of the Boy Scouts. Not only Cub Scouts, but also Boy Scouts, are taught to do their duty to God. The Scout Law provides that the scout must be reverent and faithful in his religious duties. The director of the Orange County regional council testified that the plaintiffs are ineligible to participate in the council's program because they do not agree with the Cub Scout Promise, and that in order to participate, boys should not only say the promise, but believe it.

Defendant also introduced numerous formal declarations by the Boy Scouts of America to demonstrate the importance of religion, and the scout's duty to God, in its training of youth.

Evidence was presented regarding the process by which values of the Boy Scouts of America are instilled in youth membership. The organization conveys its precepts to scouts through education. With respect to the religious element of its teaching, although the Boy Scouts of America does not define what constitutes belief in God or membership in a religious organization, it strongly encourages boys to join and participate in the religious programs and activities of a church, synagogue, or other religious association. Adult leaders are trained to instill the values of the organization in their charges, including the value of reverence for God. Adult Cub Scout leaders are expected to convey to their scouts the fundamental belief that they cannot develop into the best kind of citizen without recognizing an obligation to God. Leaders specifically are instructed to introduce the idea and meaning of God to scouts, and to teach nonsectarian religious ideals by way of explaining the child's duty to God.

The evidence also showed that some of the moral teaching undertaken by the Boy Scouts of America is accomplished through requirements imposed upon boys wishing to advance through the ranks.

Several witnesses testified that the religious affirmation contained in the Cub Scout Promise is reinforced through regular repetition of the promise at den and pack meetings. In the view of one council leader, a purpose of the Cub Scout program is to create a protective environment for instruction in religious principles. This witness also testified that other scouting values, such as trustworthiness, depend upon a belief in God.

Parents of Cub Scouts in plaintiffs' den and pack testified that they hoped certain values, including religious ones, would be instilled through the Cub Scout program, as promised by the parent handbook for new Cub Scouts. Defendant also presented evidence that 50 percent of the dens within the regional council's territory are sponsored by religious organizations, and several leaders of religious organizations testified that they encourage their youth to participate in scouting because it reinforces the importance of religion in a boy's life.

Finally, defendant produced evidence intended to establish that requiring the inclusion of nonbelievers within the Cub Scouts would interfere with the organization's efforts to convey its religious message.

After considering the evidence presented by both parties, the trial court ruled in favor of plaintiffs. The trial court first determined that defendant is a business establishment within the meaning of the Unruh Civil Rights Act, relying upon the organization's nonexclusive membership policy and large membership, its commercial transactions with the public, its businesslike

organizational structure, its large income and investments, its employment of a large professional staff, its fund-raising activities, and its opening of certain of its facilities to nonmembers.

With regard to the constitutional issues, the trial court found that the evidence did not support defendant's claim that the intimate associational rights of den leaders and Cub Scouts in the den would be seriously impaired if members who do not promise to fulfill a duty to God are permitted to join. As for the Orange County Council, the court determined that it was too large an organization to have intimate associational rights.

The trial court also concluded that the constitutional right of expressive associational freedom does not entitle defendant to exclude plaintiffs from membership.

On the basis of the foregoing conclusions, the trial court issued a permanent injunction against defendant, preventing it from excluding plaintiffs from membership or advancement in the organization or in a den, pack, troop, or post based upon plaintiffs' religious beliefs or lack thereof, their refusal to swear an oath or a duty to God, or to use the word "God" in any pledge, oath, or promise or vow, or their failure to participate in any religious activities. The court awarded statutory damages of $250 and, pursuant to the stipulation of the parties, reserved the issue of costs and attorney fees to proceedings to be held after the finality of the matter on appeal.

Defendant appealed, and the Court of Appeal affirmed the judgment in part and reversed it in part. The majority declared that *Curran v. Mount Diablo Council of the Boy Scouts* (1983) 147 Cal.App.3d 712, 717, 730-731 [195 Cal.Rptr. 325, 38 A.L.R.4th 607] *(Curran I)* established that the Boy Scouts at the national and council level is a business establishment subject to the Unruh Civil Rights Act, and that the application of the Act to that organization does not violate its constitutional right of free association, either by infringing upon the right of intimate association or the right of expressive association. The Court of Appeal reversed the judgment, however, to the extent it purported to enjoin the actions of packs and dens, on the ground that no pack or den had been named as a party.

The dissenting justice on the Court of Appeal panel, who would have reversed the trial court judgment in its entirety, maintained that *Curran I, supra,* 147 Cal.App.3d 712, did not decide the issues presented here and, alternatively, that *Curran I* was wrongly decided. The dissent emphasized the noncommercial aspects of the Orange County Council's activities and the importance of religion to its message, and concluded that the council is

not a business establishment for the purposes of the Unruh Civil Rights Act. As for the constitutional issues, the dissenting justice concluded that the First Amendment prohibits the state from forcing the Boy Scouts to disregard its own ideals or to forfeit the right to associate based upon common beliefs and values.

We granted defendant's petition for review to consider the issues presented in this case in conjunction with the appeal in *Curran*.

## II

For the reasons set forth in *Curran*, *supra*, 17 Cal.4th 670, we conclude that defendant's attributes and activities render the Unruh Civil Rights Act inapplicable to its membership decisions. Defendant not only is a charitable organization with a predominantly expressive social purpose unrelated to the promotion of the economic interests of its members, but offers to its members a program that is not the equivalent of a traditional place of public accommodation or amusement. Despite the organization's limited business transactions with the public, defendant does not sell the right to participate in the activities it offers to its members. For these reasons, with regard to its membership decisions, defendant is not operating as a business establishment within the purview of California's public accommodation statute.

## III

Because we have concluded that the Unruh Civil Rights Act does not apply to defendant's membership decisions, we need not consider defendant's contention that application of the Unruh Civil Rights Act to its membership decisions under the circumstances of this case would violate its right of intimate or expressive association under the First and Fourteenth Amendments to the federal Constitution.

The judgment of the Court of Appeal is reversed to the extent it affirms the judgment of the trial court.

Kennard, J., Baxter, J., and Chin, J., concurred.

**MOSK, J.**—I concur in the result.

Through its Orange County Council, the Boy Scouts of America refused to permit Michael and William Randall, who were then Cub Scouts, to advance as members of the organization because of their religion—or, more precisely, because of their lack of religion.

Thereupon, the Randalls brought an action in the superior court against the Boy Scouts, specifically, the Orange County Council, claiming in substance that, by refusing to permit them to advance as members, it violated section 51 of the Civil Code (hereafter section 51), the so-called Unruh Civil Rights Act, which prohibits discrimination on bases including religion. Determining that section 51 covered the Boy Scouts in the formulating and implementing of membership policies as to members and potential members, and that its application would not infringe, inter alia, its members' right of expressive or intimate association under the First Amendment to the United States Constitution, the superior court rendered judgment in favor of the Randalls and against the Orange County Council.

The Court of Appeal affirmed in pertinent part. It agreed with the superior court as to both the coverage of section 51 and the noninfringement of the First Amendment right of expressive and intimate association. It gave judgment accordingly.

I agree with my colleagues that, in pertinent part, we must reverse. I am of the view that section 51 does not cover the Boy Scouts in the formulating or implementing of membership policies as to members or potential members.

As I explain in my concurring opinion in *Curran* v. *Mount Diablo Council of the Boy Scouts* (1998) 17 Cal.4th 670, 702-722 [72 Cal.Rptr.2d 410, 952 P.2d 218], section 51 expresses a policy against discrimination, on certain bases, in the general area of relationships between private persons and entities: "All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, or disability are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." The phrase "business establishments" means areas of activity encompassing proprietor-patron relationships, which involve the providing of goods or services, nongratuitously, for a price or fee, in the course of relatively noncontinuous, nonpersonal, and nonsocial dealings.

It follows that section 51 does not cover the Boy Scouts, at any level of the organization, in the formulating or implementing of membership policies as to members or potential members. That is because at no level does it operate in that regard as a "business establishment"—that is to say, at no level does it occupy in that regard an area of activity encompassing proprietor-patron relationships. The record on appeal is unequivocal. For the relationship between the Boy Scouts and the member or potential member in the formulating and implementing of membership policies, at whatever level of the organization, does not, in actuality, involve the providing of goods or

services, nongratuitously, for a price or fee, notwithstanding the payment of dues; moreover, the dealings in question are not relatively noncontinuous, nonpersonal, and nonsocial dealings, but quite the opposite.

For the reasons stated above, I join with my colleagues in reversing the judgment of the Court of Appeal to the extent that it affirms the judgment of the superior court in favor of the Randalls and against the Orange County Council.

**KENNARD, J.,** Concurring.—I join in the Chief Justice's majority opinion in this case for the reasons expressed both in the majority opinion and in my concurring opinion in the companion case of *Curran* v. *Mount Diablo Council of the Boy Scouts* (1998) 17 Cal.4th 670 [72 Cal.Rptr.2d 410, 952 P.2d 218].

**WERDEGAR, J.**—I concur in the judgment. (See *Curran* v. *Mount Diablo Council of the Boy Scouts* (1998) 17 Cal.4th 670, 729-733 [72 Cal.Rptr.2d 410, 952 P.2d 218] (conc. opn. of Werdegar, J.).)

**BROWN, J.**—I concur in the judgment for the reasons expressed in my concurring opinion in the companion case of *Curran* v. *Mount Diablo Council of the Boy Scouts* (1998) 17 Cal.4th 670, 733-735 [72 Cal.Rptr.2d 410, 952 P.2d 218].

Respondents' petition for a rehearing was denied May 13, 1998.